Philip A. Turney
24289   ICC / G 101 B
P.O. Box  70010
Boise, Idaho   83707

U.S. COURTS

DEC 17 2012

Rcvd____Filed____Time____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP A. TURNEY,<br><br>    Petitioner,<br><br>v.<br><br>TIMOTHY WENGLER, Warden,<br><br>    Respondent de facto;<br><br>BRENT REINKE, and,<br>LAWRENCE G. WASDEN,<br><br>    Constructive Custodian,<br>    Respondents. | Case No. 1:12-CV-611-REB<br><br>PETITION<br>FOR WRIT OF HABEAS CORPUS<br>28 U.S.C. § 2254 |

    **COMES NOW**, Philip A. Turney, Petitioner pro se, and presents the Court his Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, by a citizen who is in state custody, and hereby alleges the following:

### I.   CONVICTIONS AND SENTENCES CHALLENGED

1.   The judgment of conviction and sentences imposed were entered in the State of Idaho, County of Ada, Fourth Judicial District Court, Honorable Cherie C. Copsey, Judge presiding.

2.   The case was docketed No. CR-FE-2005-0000123 (formerly H050000123).

PETITION FOR WRIT OF HABEAS CORPUS - 1



3. The petitioner was charged with two counts of aggravated driving under the influence of alcohol (DUI), Felony, I.C. § 18-8006; and of being a persistent violator of the law as charged in the Information Part II., Felony, I.C. § 19-2514.

4. The petitioner plead not guilty and the district court conducted a jury trial March 6, 2006.

5. The jury having entered its verdict finding the petitioner guilty of all charges on March 10, 2006.

6. On May 3, 2006, the district court imposed sentence as follows:

   (a) "...the Defendant be sentenced to the Idaho State Board of Correction, under the Unified Sentence Law of the State of Idaho, for an aggregate term of life, on each count to be served as follows: a <u>minimum</u> period of confinement of fifteen (15) year(s), followed by a <u>subsequent indeterminate</u> period of custody not to exceed life, said terms to commence immediately and each count to run concurrently...";

   (b) It was further ordered the petitioner's Driver's License be absolutely suspended for a period of five five years, to commence upon release from incarceration;

   (c) The Judgment of Conviction was duly entered May 8, 2006.

## II. DIRECT APPEAL

7. On June 13, 2006, the petitioner appealed from the Judgment and Conviction. The Idaho Court of Appeals affirmed the convictions and sentences on June 2, 2009, Opinion No 42, <u>State v. Turney</u>, 147 Idaho 690. 214 P.3d 1169. (Docket No. 33154 - 2006)

//

PETITION FOR WRIT OF HABEAS CORPUS - 2

8. On or about June 23, 2009, appellate counsel filed a Petition for Review to the Idaho Supreme Court, Docket No. 33154, which was subsequently denied September 1, 2009. A Remittitur was issued September 2, 2009.

9. The issues presented on direct appeal were as follows:

   (a) Was Mr. Turney twice put in jeopardy for the same offense when he was charged and convicted of two counts of aggravated DUI when there was only one act of driving?

   (b) Did the district court abuse its discretion when it imposed concurrent sentences of life, with fifteen years fixed?

10. Following the Court of Appeals affirming the convictions and sentences, appellate counsel sought review from the Idaho Supreme Court. Therein, the following issue was presented:

    (a) Should review be granted because Mr. Turney's multiple convictions for aggravated DUI resulting from one act of driving violate the prohibition against double jeopardy and because his sentences are excessive?

### III. POST-CONVICTION COLLATERAL PROCEEDINGS

11. The petitioner submitted an application for post-conviction relief on August 24, 2010, tendering the pleading to prison officials that same day. The district court file stamped the petition on August 27, 2010.

12. The Fourth District Court docketed the Case No. CV-PC-2010-17169.

13. The Petition for Post-Conviction Relief was predicated upon Idaho Code § 19-4901 et seq.

14. The petitioner's pro se application for post-conviction relief set forth grounds alleging the Judgment of Conviction is contrary to, or involve

an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

15. The issues presented on post-conviction were as follows:

<u>Prosecutorial Error</u>

(a) Mr. Turney was denied a fair trial by the state's presentation of perjured testimony.

(b) The state presented unreliable testimony by a witness who made inconsistent statements known by the prosecutor to be untrue.

(c) The prosecutor improperly commented on matters not in evidence which hindered the jury from considering only the evidence introduced.

(d) Law enforcement and Prosecuting officials destroyed exculpatory evidence.

16. <u>Ineffective Assistance Of Trial Counsel</u>

(a) Trial counsel neglected to present qualified expert to testify on the air bag's deployment system, an important component of the case.

(b) Trial counsel erred by failing to move for acquittal due to insufficiency of evidence.

(c) Trial counsel was ineffective for failing to fully investigate or subpoena a material eye witness to testify at trial.

17. <u>Ineffective Assistance Of Appellate Counsel</u>

(a) Appellate counsel failed to adequately review trial record or present on appeal a claim involving a missing jury instruction.

(b) Appellate counsel failed to brief issue involving improper commentary on evidence.

18. The district court denied appointment of counsel to assist Mr. Turney in presenting his claims for post-conviction relief.

19. The district court summarily dismissed Turney's application for post-conviction relief on March 1, 2011.

20. On March 3, 2011 the district court entered its Final Judgment Dismissing Petition.

21. Turney filed a timely Notice of Appeal to the Idaho Supreme Court and tendered the same to prison officials on March 23, 2011. A file stamp was placed on the appeal March 25, 2011.

22. The appeal from the judgment summarily dismissing Turney's petition for post-conviction relief was docketed 38669-2011.

23. On June 29, 2012, the Court of Appeals issued Unpublished Opinion No. 547, affirming the convictions and sentences.

24. On October 17, 2012, the Court of Appeals denied a petition for rehearing.

25. Once more, Turney applied to the Idaho Supreme Court for review; however, that petition was denied and a final Remittitur issued November 26th., 2012.

26. The issues presented on appeal of the judgment summarily dismissing the petition for post-conviction relief, were as follows:

    (a) Did the district court err in dismissing Turney's Petition for Post-Conviction Relief because the claims presented issues of material fact?

    (b) Did the district court err by failing to appoint counsel to assist Turney in the post-conviction proceedings?

//

PETITION FOR WRIT OF HABEAS CORPUS - 5

27. This concludes a brief synopsis of the course of prior proceedings.

——————— ooOoo ———————

## IV.  PREFATORY STATEMENT

28. Here, Turney – a state prisoner – contends that his state convictions and sentences for Aggravated DUI, with an enhancement for being a persistent violator of the law, were obtained in violation of the guarantees provided under the United States Constitution. Furthermore, Turney asserts that the findings below are contrary to the rulings of numerous United States Supreme Court cases, federal law, the legal precepts of 28 U.S.C. 2241 – 2254, and are based upon claims of double jeopardy, prosecutorial error and ineffective assistance of trial and appellate counsel.

29. In particular, an evidentiary hearing and appointment of counsel are requested.

## V.  JURISDICTION AND VENUE

30. Jurisdiction in these proceedings is granted under Article I, Section 9 and Article III, Section 2 of the Constitution of the United States; as well as 28 U.S.C. §§ 2241 through 2254 of the U.S. Code.

31. Venue is properly before this Court because the circumstances and events giving rise to these proceedings occurred within the State of Idaho, County of Ada.

//
//
//

## VI.   STATEMENT OF THE CASE

32.  Early in the morning on December 24, 2004, Boise City Police officers Brian Hagler and John "Tony" White were conducting a traffic stop on Vista Avenue when another vehicle crashed into Officer Hagler's patrol car, which in turn hit Officer White's vehicle. Officer White testified that, right after the collision, he saw a man "at the scene and saw him roll out and get on the ground right here and just start flailing."

33.  An individual at the scene was Mr. Turney; the vehicle involved was a taxi cab and his Boise City operator's license was inside the vehicle. Mr. Turney's blood alcohol concentration was .16. Both, at the accident scene, and later at trial, Mr. Turney denied being the driver of the taxi cab at the time of the collision.

34.  Mr. Turney has consistently maintained that a colleague, Tom Sage, was the driver. Mr. Turney always maintained that he was in the back seat of the vehicle at the time of the collision.

35.  Mr. Turney testified that on the evening of December 23, 2004, he and Mr. Sage were in the "taxi line" at the Boise Municipal Airport, where they agreed to meet for a drink after their last fares of the night. Around 11:50 that evening, Mr. Turney picked up Mr. Sage from his residence on Phillipi Street and they drove to the Fireside Inn, a tavern located on State Street.

36.  Before they entered the bar, Mr. Turney removed his eyeglasses and placed them in the console between the seats; as Mr. Turney required corrective lenses to drive. The glasses were later found inside the console of the vehicle.

//

37. Mr. Turney testified that he gave his car keys to Mr. Sage and told him they needed to call for a "drive-away, somebody to come and pick us up because I wasn't going to drive after having a drink." Mr. Turney explained that "each and every time" he drank with Mr. Sage, they had arranged for a "drive-away".

38. Mr. Turney and Mr. Sage were at the Fireside Inn for approximately 40 or 45 minutes; Mr. Turney consumed two mixed drinks. They left to go to the Navajo Room, a bar located at Emerald and Orchard Street. Mr. Turney stated that he got in to the back of the taxi and Mr. Sage drove; at this point Mr. Sage had drank only one beer.

39. Mr. Sage and Mr. Turney arrived at the Navajo Room around 1:00 a.m.; Mr. Sage went up to the bar and Mr. Turney went to speak to a couple of acquaintances he saw.

40. Mr. Turney testified that at about 2:00 a.m., he left the bar and got into the back seat of the taxi cab; he fell asleep waiting for Mr. Sage and their "drive-away", Sam Binion. Mr. Binion testified that he received a call from either Mr. Turney or Mr. Sage on the night in question, and that he was requested to pick them up and conduct a "drive-away". Mr. Binion explained that, because it was Christmas Eve, he was too busy to get them immediately but would do so in about an hour.

41. Mr. Turney further testified that he woke up to "a huge crash, a very loud noise,; and that he was "forcefully vaulted into the bucket seats and the console area of the cab and I [came] to rest face down with my arms up underneath me on the floor of the cab." He testified that he saw Mr. Sage "roll over out of the driver's seat of the car and exit the

PETITION FOR WRIT OF HABEAS CORPUS - 8

car." Nobody else testified to actually seeing Mr. Sage at the accident scene.

42. Mr. Sage testified, and he confirmed that he went to both the Fireside Inn and the Navajo Room with Mr. Turney that evening; however, he said that he drove Turney's taxi cab back to his house (on Phillipi Street), and then Mr. Turney drove off. He testified that the following morning he received a call from Mr. Turney, who informed him that he needed to tell the police that he, and not Mr. Turney, was driving the cab at the time of the accident.

43. Prior to commencement of the jury trial Mr. Sage had provided law enforcement, and prosecuting officials with multiple inconsistent statements concerning the aforementioned line of testimony. See: Trial Exhibit #61, Boise Police Department Standard Statement Form, under signature of Thomas R. Sage, December 25, 2004, compared to sworn testimony in the presence of the jury (Tr., pp.433-485; 944-946). See also: Defense Exhibit "C", Brady-Agur disclosure by state prosecutor, dated December 8, 2005.

44. Juanita Cunningham, a woman who provided a room to Mr. Sage in 2004, testified that on the evening in question Mr. Sage returned home at "ten minutes to 5:00" when the morning newscast was coming on. Moreover, Ms. Cunningham testified she had observed on Mr. Sage's return home, that there "was a bunch of white stuff on [his clothes]" which resembled "flour or powder."

45. Ms. Cunningham testified she did not know Mr. Turney, other than as an acquaintance of Mr. Sage.

//

PETITION FOR WRIT OF HABEAS CORPUS - 9

46. According to Ms. Cunningham, Mr. Sage told her that he was driving the cab when it crashed into the police officers vehicle.

47. Thereafter, Ms. Cunningham telephoned "the Crime Stoppers" tip line reporting her concerns the wrong person had been arrested and that Mr. Sage had admitted to driving the vehicle which hit the police officers.

48. Mr. Turney was charged with two counts of aggravated DUI, with seperate counts for each of the two officers who were injured[1], along with a persistent violator enhancement.

49. Mr. Turney was convicted on all charges, and the district imposed concurrent unified sentences of life, with fifteen years fixed.

50. On direct appeal, Mr. Turney asserted that his multiple convictions and sentences for aggravated DUI violated the constitutional prohibition against double jeopardy and that his sentences were excessive. The Court of Appeals affirmed. The court held that, because the actus reus of aggravated DUI was causing injury, rather than driving, multiple convictions and sentences were constitutionally sound. (Opinion, p.3.) The court further held that Mr. Turney's sentences were not excessive. (Opinion, p.5.)

51. Mr. Turney petitioned the Idaho Supreme Court for review of that opinion, and on September 1, 2009, review was denied and the Remittitur issued September 2, 2009.

---

[1] The state argued that both officer's (Hagler and White) had sustained great bodily harm. Generally speaking, an injury only meets this standard if it created a substantial risk of fatal consequences or, when inflicted constituted mahem. Garner, Bryan A., ed. Black's Law Dictionary. Abridged Ninth Edition 2010.

PETITION FOR WRIT OF HABEAS CORPUS - 10

## VII. GROUNDS FOR RELIEF

**A** THE PETITIONER WAS TWICE PUT IN JEOPARDY FOR THE SAME OFFENSE WHEN HE WAS CONVICTED OF TWO SEPERATE COUNTS OF AGGRAVATED DUI WHEN THERE WAS ONLY ONE ACT OF DRIVING:

52. Did the state violate Turney's rights protected under the Fifth Amendment of the United States Constitution whereby "[n]o person shall be...subject for the same offense to be twice put in jeopardy of life or limb."?

53. Even assuming arguendo that he did all that he was accused of having done, he was guilty of, at most, one offense of aggravated DUI. Thus, by charging and convicting him of two seperate offenses, he was placed in jeopardy twice, unequivocally violating the double jeopardy provisions of both the United States and Idaho Constitutions.

54. The foregoing argument has been fully briefed and set out in the Appellant's Brief; Reply Brief, and Appellant's Brief in support of Petition for Review. The petitioner incorporates the foregoing in haec verba as if they were fully set forth herein.

**B** INNEFFECTIVE ASSISTANCE OF COUNSEL AT THE PRE-TRIAL, THE TRIAL, AND POST-TRIAL STAGES OF THESE PROCEEDINGS HAS RESULTED IN CONVICTIONS AND SENTENCES WHICH CANNOT BE RELIED UPON BEYOND A REASONABLE DOUBT, EITHER INDIVIDUALLY OR CUMULATIVE; AND, WHICH ABROGATE THE PETITIONER'S RIGHT'S UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AS WELL AS UNITED STATES SUPREME COURT HOLDINGS IN STRICKLAND v. WASHINGTON, 466 U.S. 668 (1984); U.S. v. CRONIC, 466 U.S. 648 (1984); BROWN v. OHIO, 432 U.S. 161 (1977); and MARTINEZ v. RYAN, ___ U.S. ___ (2012) **among others.** These issues, individually are:

55. Did the state court err by summarily dismissing Turney's claims of ineffictive assistance of trial counsel due to trial attorney's failure to interview a material eyewitness, or exercise compulsory process to subpoena said witness to testify at trial?

56. Did the state court err by denying Turney's claim of ineffective assistance of counsel due to trial attorney's failure to present a qualified expert to testify on the air bag deployment system, an important component of the case?

57. Did the state court err by denying Turney's claim of ineffective assistance, where trial counsel failed to move for acquittal due to insufficiency of evidence?

58. Did the state court err in dismissing certain claims of deficient performance when they raised genuine questions of material fact and by not considering the cumulative effect of trial counsel's errors in ¶¶ 55 - 57 above, and whether Turney was prejudiced thereby?

59. Did the state court err by denying Turney appointment of counsel in the collateral proceeding because it was the first place to raise his claim of ineffective assistance at trial?

60. Did the state court err by denying Turney's claims of ineffective assistance of appellate counsel, where government appointed appellate counsel failed to adequately review trial record and/or present on appeal a claim involving a missing jury instruction?[2]

---

[2] Idaho Jury Instruction 318, although initially read to the jury in open court, the written instruction was omitted from the packet later sent to the jury for deliberations. (Tr., pp 989-993)

61. Did the state court err in denying Turney's motion to conduct discovery in aid of supporting his claims with admissible evidence sufficient to defeat the State's Motion to Dismiss the petition for post-conviction relief?

C  THE PETITIONER WAS DENIED HIS RIGHTS TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS PROVIDED BY THE UNITED STATES CONSTITUTION, WHEN THE STATE PRESENTED PERJURED AND UNRELIABLE TESTIMONY TO OBTAIN CONVICTION, VIOLATING THE ACCUSED RIGHT TO A FAIR TRIAL:

62. Did the state court err in summarily dismissing Turney's claim that perjured testimony was presented at trial, depriving the petitioner of his constitutionally protected right to a fair trial?

63. Did the state court err by denying Turney's claim the prosecutor knowingly presented unreliable testimony from a material witness, after said witness had provided law enforcement with multiple inconsistent statements known to be untrue?

64. Did the state court err in dismissing Turney's claim the prosecutor had improperly commented on matters not in evidence which hindered the jury from considering only the evidence properly introduced?

65. Did the state court err in denying Turney's cliam that law enforcement agents and prosecuting officials failed in their duty to preserve exculpatory evidence immediately available at the time of the vehicle collision?

66. Was the departure from standard chain of evidence guidelines sufficient to undermine Turney's right to best evidence; and did the state court err in dismissing post-conviction claims that were crucial and essential to support Turney's actual innocence defense?

**D** THE PETITIONER WAS DENIED HIS RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS PROVIDED BY THE UNITED STATES CONSTITUTION, WHEN THE STATE COURT SUMMARILY DISMISSED HIS POST CONVICTION CLAIMS WITHOUT AN EVIDENTIARY HEARING:

67. Did the State's Motion to Dismiss Turney's petition for post-conviction relief provide sufficient notice[3] to permit the trial court to summarily dismiss that petition, where the initial review collateral proceeding was the first designated oportunity for Turney to raise his ineffective counsel claims?

68. Did the state court err by denying an evidentiary hearing, where no other court has addressed the claim, and Turney was ill equipped to represent himself having no brief from previous counsel and no court opinion addressing these claims? [4]

69. Did the state court err in denying an evidentiary hearing entitled to Turney under state law and the due process protections of the U.S. Constitution, and U.S. Supreme Court ruling in Townsend v. Sain, 372 U.S. 293 (1963) and others.

70. Even assuming arguendo that the notice provided in issue **D** was adequate: Did the trial court err in dismissing certain claims of deficient performance when they raised genuine questions of material fact affecting substantive rights and by not considering whether Turney was prejudiced thereby?

---

[3] To an indigent, un-counseled prisoner who had expressed to the court he lacked the resources, and/or cooperation of his trial attorney in gaining access to case file material.

[4] Cf. Halbert v. Michigan, 545 U.S. 605, 617.

PETITION FOR WRIT OF HABEAS CORPUS - 14

——————— ooOoo ———————

## VIII.   PRELIMINARY CONSIDERATIONS

71.   All of the issues raised herein have been fully exhausted, See: Grounds For Relief **"A"**, or, have been fairly presented to Idaho's state court's, See: Grounds For Relief **B**; **C**; and **D**, above.  To the extent issues of procedural default may arrise, the cause for any perceived default rests entireley on the state, who repeatedly denied your petitioner the assistance of counsel in collateral proceedings.

72.   Each of the rulings and opinions below giving rise to these grounds for releif, are contrary to the established law and previous opinions of the U.S. Supreme Court; represent an unreasonable determination U.S. Supreme Court holdings; or, stem from an unreasonable determination of the facts.

73.   Each argument set forth herein, complies with the edict of the Anti-Terrorism and Effective Death Penalty Act (hereafter "AEDPA") enacted by Congress April 24th., 1996, since this application has been filed within one (1) calendar year of the Remittitur from Turney's direct appeal, and not including those times where a properly filed collateral attack upon his convictions and sentences were legitimately in place.

74.   None of the arguments listed herein have been previously litigated in any federal court, nor are any actions pending which include these issues in any state or federal court of law.

//
//
//

PETITION FOR WRIT OF HABEAS CORPUS - 15

## IX. REQUEST FOR APPOINTMENT OF COUNSEL

75. The need for Court appointed counsel, pusuant to 18 U.S.C. § 3006(a), is predicated on the following circumstances:

   (a)   That this being a case involving complicated legal claims, centering on issues involving double jeopardy violations; due process of law; prosecutorial error; perjury; and, ineffective assistance of trial and appellate counsel, the petitioner will undoubtedly need to testify regarding conflicting factual matters.

   (b)   There are numerous factual errors in the underlying record that override the presumption of correctness envisioned by the AEDPA, as set out therein, and, which will require an evidentiary hearing to fairly resolve the facts, and where such a hearing should have occurred on all the issues at the state level.

   (c)   The petitioner is imprisoned in a state facility contracted to a private entity operation. The facility lacks any sort of law library, meaningful research, e.g. Federal Reports, or other thesis of law.

   (d)   The petitioner is indigent, unable to afford the services of an attorney.

   (e)   Furthermore, the Idaho State Law Library has canceled its service to prisoner's. The petitioner has no access whatsoever to internet research engines where case law is available, or the means to purchase private research on the issues presented in this case.

   (f)   The foregoing cumulative facts require someone other than a pro se litigant to be able to research, draft, and properly present the legal arguments

involved.

## X.   PRAYER FOR RELIEF

**WHEREFORE**, Petitioner prays this Honorable Court to conduct its initial review and enter an Order that sets out the following:

76. Accepting jurisdiction in these matters and moving the proceedings forward on the Court's normal calendar.

77. Provide service on the Respondent(s) and require the constructive custodian(s) to produce the relevant portions of the record and to file an Answer.

78. Determine that the Petitioner is unlawfully convicted and confined, warranting issuance of the **Writ**.

79. **GRANT** such further and other relief as this Court deems just and appropriate under the premises.

## XI.   DECLARATION UNDER PENALTY OF PERJURY

I, DO HEREBY DECLARE UNDER PENALTY OF PERJURY:

80. That I am the Petitioner in the above-entitled action; that I have read the foregoing Petition for Writ of Habeas Corpus in its entirety, and, swear that the information contained therein is **true** and correct.

81. That the original and two (2) copies of the Petition were delivered to the Clerk of the United States District Court for the District of Idaho, James A. McClure Federal Building and Courthouse, by mailing the same, U.S. Mail, first class postage prepaid, on this 11th day of December, 2012.

//
//

PETITION FOR WRIT OF HABEAS CORPUS - 17

**EXECUTED** at the Idaho Correctional Center, 14601 South Pleasant Valley Road, State of Idaho, County of Ada, by the Declarant as evidenced by the signature below.

**DATED** this 11<sup>th.</sup> day of December, 2012.

*Philip A. Turney*
PHILIP A. TURNEY
Petitioner - Declarant **pro se**