UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

PHILIP A. TURNEY,

                Petitioner,

      v.

TIMOTHY WENGLER, BRENT
REINKE, and LAWRENCE WASDEN,

            Respondents.

Case No. 1:12-cv-00611-BLW

**MEMORANDUM DECISION AND
ORDER**

Pending before the Court is Petitioner Philip A. Turney's Petition for Writ of

Habeas Corpus (Dkt. 1). Respondents have filed a Motion for Partial Summary Dismissal.

(Dkt. 9). Petitioner has filed a response to the Motion (Dkt. 17). Respondents have filed a

Reply (Dkt. 18), and Petitioner has filed a sur-reply (Dkt. 21). The Court takes judicial

notice of the records from Petitioner's state court proceedings, lodged by Respondents on

August 1, 2013 (Dkt. 10). *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550,

551 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court

finds that the parties have adequately presented the facts and legal arguments in the briefs

and record and that the decisional process would not be significantly aided by oral

argument. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, the Court enters the following

Order granting Respondent's Motion in part and dismissing Claims 2(b), 2(c), 4, and 5(a)-(e) as procedurally defaulted, and dismissing Claims 3 and 6 as noncognizable. Therefore, the only claims remaining in this action are Claims 1 and 2(a), and Respondents shall file an answer to these claims within 90 days after entry of this Order.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *State v. Turney*, 214 P.3d 1169 (Idaho Ct. App. 2009), which is also contained in the record at State's Lodging B-4. Petitioner was convicted of two counts of aggravated driving under the influence (DUI) for causing serious injury to two police officers; he was also convicted of being a persistent violator. *Id.* at 1170. He was sentenced to concurrent unified terms of life imprisonment, with fifteen years fixed. *Id.*

On direct appeal, Petitioner argued that he had been subjected to double jeopardy in violation of the Fifth Amendment because there was only a single act of driving under the influence and, therefore, he could not be charged with two separate counts. Id. at 1170-71. The Idaho Court of Appeals determined that "driving is not the *actus reus* of the offense" of aggravated DUI; rather, the statute penalizes any person "causing great bodily harm . . . to any person other than himself in committing" a DUI offense. *Id.* at 1171 (quoting Idaho Code § 18-8006(1)). Therefore, because Petitioner injured two people, he was appropriately charged with two counts of aggravated DUI. The court of appeals also rejected Petitioner's claim that his sentence was excessive. The Idaho Supreme Court

**MEMORANDUM DECISION AND ORDER  2**

denied Petitioner's petition for review. (State's Lodging B-7.)

Petitioner then filed a petition for postconviction relief in state court, asserting the following claims:

(1)     Denial of a fair trial because the state (a) presented perjured testimony of one witness; (b) presented "unreliable" testimony of another witness; (c) improperly commented on matters not in evidence; and (d) failed to preserve exculpatory evidence.

(2)     Ineffective assistance of trial counsel based on counsel's failure to (a) present a qualified expert on the air bag deployment system; (b) move for acquittal based on insufficiency of the evidence; and (c) investigate or subpoena a material witness to testify at trial.

(3)     Ineffective assistance of direct appeal counsel based on counsel's failure to (a) adequately review the trial record or present on appeal a claim involving a missing jury instruction; and (b) raise and brief the issue of the prosecutor's allegedly improper commentary on the evidence.

(State's Lodging C-1 at 4-10, 43.) The state district court concluded that Petitioner's claims were frivolous and therefore denied his motion for appointment of counsel. (State's Lodging D-4 at 1-2.) The court later entered an order conditionally dismissing the postconviction petition, to which Petitioner responded. Ultimately, the court summarily dismissed the petition. (*Id*. at 2.)

Petitioner appealed the dismissal of his postconviction petition. In the issues statement and in the headings in his appellate briefing, Petitioner stated broadly that he was challenging the district court's denial of postconviction counsel and its summary dismissal of the petition. (State's Lodging D-1 at 6-7, 12.) However, in the substantive argument portion of his brief, he argued only two claims: (1) that the prosecution violated

his right to a fair trial by presenting a witness that committed perjury; and (2) that the state district court should have appointed postconviction counsel because Petitioner raised the possibility of a valid claim of ineffective assistance of trial counsel based on counsel's failure to interview Travis Anderson, an eyewitness to the accident. (*Id*. at 10-12, 15-18.) The Idaho Court of Appeals affirmed the dismissal of the petition. Petitioner filed a petition for rehearing and a petition for review, raising only the ineffectiveness issue. He did not argue that the Idaho Court of Appeals erred in upholding the dismissal of his claim regarding the perjured testimony. (State's Lodging D-7, D-9.) The court of appeals denied the petition for rehearing, and the Idaho Supreme Court denied the petition for review. (State's Lodging D-8, D-10.)

Petitioner filed the instant federal Petition in December 2012, asserting six categories of claims. Petitioner labels his claims as Claims A, B, C, and D. However, because there are six broad categories of claims rather than four, and because some of the claims contain sub-claims, the Court will adopt Respondents' numbering of the claims in the Petition for clarity. (*See* Dkt. 9-1 at 5.)

Respondent now moves for summary dismissal of Claims 2 through 6. Claim 2 (labeled in the Petition as Claim B) alleges ineffective assistance of trial counsel based on counsel's failure to (a) interview and subpoena Travis Anderson; (b) present a qualified expert to testify regarding the air bag deployment system; and (c) move for an acquittal on insufficiency of evidence grounds. (Pet., Dkt. 1, ¶¶ 55-58.) Petitioner argues that he was

prejudiced by the cumulative effect of these alleged errors. (*Id.* ¶ 58.)

Claim 3 (found at ¶ 59 of the Petition within Petitioner's general discussion of his ineffective assistance of counsel claims) asserts that Petitioner the state courts wrongfully denied his request for the appointment of counsel during postconviction proceedings because postconviction review "was the first place to raise his claim of ineffective assistance at trial."

Claim 4 (found at ¶ 60 of the Petition) alleges that direct appeal counsel was ineffective for allegedly failing "to adequately review [the] trial record and/or present on a appeal a claim involving a missing jury instruction."

Claim 5 (labeled in the Petition as Claim C) alleges that Petitioner was denied due process when the prosecutor allegedly (a) presented perjured testimony; (b) knowingly presented unreliable testimony; (c) commented on matters not in evidence; (d) failed to preserve exculpatory evidence; and (e) "depart[ed] from standard chain of evidence guidelines." (*Id.* ¶¶ 62-66.)

Claim 6 (labeled in the Petition as Claim D and included in part at ¶ 61 of the Petition within the general discussion of Petitioner's ineffective assistance of counsel claims) alleges that Petitioner was denied due process during postconviction proceedings when the state district court summarily dismissed his postconviction claims (a) without giving sufficient notice; (b) without holding an evidentiary hearing; and (c) without allowing discovery. (*Id.* ¶¶ 67-70; ¶ 61.)

Respondents contend that Claims 2 through 6 must be dismissed either because they are noncognizable in this federal habeas corpus action or because they are procedurally defaulted. Petitioner argues that his claims are not procedurally defaulted and alternatively argues that cause and prejudice exist to excuse the default under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

## DISCUSSION

### 1. Standard of Law Governing Summary Dismissal

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or claims contained in the petition when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in the light most favorable to the petitioner.

### 2. Claims That Are Not Cognizable on Federal Habeas Review: Claims 3 and 6

There is no constitutional right to counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 429-30 (9th Cir. 1993). Although the lack of postconviction counsel or ineffective postconviction counsel can constitute cause to excuse the procedural default of claims, it is not an independent constitutional claim. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012), and § 5, *infra*. Therefore, Claim 3—that Petitioner should have been appointed counsel during postconviction proceedings—is not cognizable in this federal habeas

action.

Claim 6—asserting errors in the state court's treatment of Petitioner's postconviction claims—is similarly subject to summary dismissal because federal habeas corpus is not the proper avenue to address errors in a state's postconviction review process. *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam); *Williams v. Missouri*, 640 F.2d 140, 143 (8th Cir. 1981) ("[I]nfirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction."). A federal court has no authority to grant habeas relief for violations of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.")

For these reasons, Claims 3 and 6 will be dismissed with prejudice. The Court now turns to Respondents' argument that Claims 2, 4, and 5 must be dismissed as procedurally defaulted.

3.      **Standard of Law Governing Procedural Default**

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of

discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim, "regardless of whether the petitioner [is] proceeding pro se." *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis omitted).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state

procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To be an "adequate" state ground, a state court's procedural bar must be one that is "'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on federal grounds and is not intertwined with federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

For the following reasons, the Court concludes that Petitioner properly exhausted Claim 2(a). However, he did not properly exhaust Claims 2(b), 2(c), 4, or any of the sub-claims in Claim 5. Because it is now too late to do so, *see* Idaho Code §§ 19-4902 & 19-4908, these claims are procedurally defaulted.

**4.      Claims 2(b), 2(c), 4, and 5(a)-(e) Are Procedurally Defaulted**

   **A.      *Claim 2, Including Sub-claims: Ineffective Assistance of Trial Counsel***

Petitioner included sub-claims 2(a), 2(b) and 2(c) in his petition for state postconviction relief. (State's Lodging C-1 at 6-7, 42-44.) However, he did not raise sub-claims 2(b) or 2(c) on appeal from the state district court's dismissal of the postconviction petition. (State's Lodging D-1 at 10-18.) Petitioner's general statements in his appellate briefs that the district court erred in dismissing the postconviction petition are insufficient to satisfy the requirement of fair presentation. *See O'Sullivan*, 526 U.S. at 842; *Hiivala*,

195 F.3d at 1106. Similarly, the issues that Petitioner included only in his Notice of Appeal (State's Lodging C-1 at 411) are also insufficient to constitute fair presentation because these issues were not included in Petitioner's appellate briefing. *See Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005) ("To exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate courts] within the four corners of his appellate briefing."). Therefore, sub-claims 2(b) and 2(c) are procedurally defaulted.

However, in the postconviction appeal Petitioner *did* raise sub-claim 2(a)—that trial counsel was ineffective for failing to interview and subpoena eyewitness Travis Anderson. (State's Lodging D-1 at 15-18.) Respondents assert that Petitioner's argument in the Idaho Court of Appeals was limited to a claim that the district court should have appointed counsel so he could pursue this ineffective assistance claim. (Dkt. 9-1 at 8-9.) However, Petitioner discussed the standards both for appointment of counsel under Idaho's postconviction statutes *and* for his substantive Sixth Amendment claim that trial counsel was ineffective regarding the lack of investigation of Travis Anderson. Petitioner thoroughly discussed the *Strickland* standards for ineffective assistance, and it was clear that he was asserting a substantive ineffective assistance claim.

Further, the Idaho Court of Appeals did not limit its discussion of Petitioner's ineffective assistance claim as merely supporting his request for postconviction counsel; it also denied the claim on the merits. In determining that Petitioner was not entitled to

postconviction counsel, the court expressly concluded that Petitioner's Sixth Amendment right to effective assistance of counsel had not been violated, stating that "the record disproves [Petitioner's] claim of ineffective assistance." (State's Lodging D-4 at 5.) Petitioner also included Claim 2(a) in his petition for review before the Idaho Supreme Court. (State's Lodging D-9.)

Therefore, the Court concludes that Claim 2(a) was properly exhausted in the Idaho state courts and decided on the merits, and this portion of Respondents' Motion for Partial Summary Dismissal will be denied.

**B.**      ***Claim 4: Ineffective Assistance of Appellate Counsel***

In his state postconviction petition, Petitioner raised claims of ineffective assistance of direct appeal counsel. (State's Lodging C-1 at 10-13.) However, he did not include those claims in his appeal from the district court's dismissal of the postconviction petition. Therefore, Claim 4 was not properly exhausted. Because it is now too late to do so, the claim is procedurally defaulted. Again, Petitioner's broad statements in his appellate briefs that the district court erred in denying postconviction relief, and issues raised only in his Notice of Appeal, do not constitute fair presentation. *See O'Sullivan*, 526 U.S. at 842; *Castillo*, 399 F.3d at 1000.

**C.**      ***Claim 5, Including Sub-Claims: Violations of Due Process***

On direct appeal from his conviction and sentence, Petitioner did not raise any of his Claim 5 sub-claims, which allege due process violations stemming from prosecutorial

misconduct and from a witness's perjured testimony. Petitioner did raise sub-claims 5(a) through 5(d) in his postconviction petition; he did not raise Claim 5(e), however. (State's Lodging C-1 at 6-8.)

On appeal from the denial of postconviction relief, Petitioner raised only one of his Claim 5 sub-claims: Claim 5(a), that his due process rights were violated when a witness committed perjury. (State's Lodging D-1 at 10-12.) Further, after the Idaho Court of Appeals affirmed the dismissal of his postconviction petition, Petitioner did *not* include Claim 5(a) in his petition for review before the Idaho Supreme Court. Rather, he argued only that trial counsel was ineffective for failing to interview Travis Anderson and that the district court should have appointed postconviction counsel. (State's Lodging D-9 at 6-11.) Therefore, Petitioner failed to properly exhaust Claim 5(a) because a habeas petitioner must present his claims to the highest state court. *O'Sullivan*, 526 U.S. at 847.

None of Petitioner's Claim 5 sub-claims were properly exhausted. Claim 5(a) was not presented to the Idaho Supreme Court, Claims 5(b) through 5(d) were not presented to the Idaho Court of Appeals, and Claim 5(e) was not presented to any state court. Because Petitioner can no longer return to state court to present these claims, they are procedurally defaulted.

### D. *Conclusion Regarding Defaulted Claims*

For the reasons set forth above, Claims 2(b), 2(c), 4, and 5(a) through (e) are procedurally defaulted. However, that conclusion does not end the inquiry. If a claim is

**MEMORANDUM DECISION AND ORDER  12**

procedurally defaulted, a federal court can still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default (more simply referred as "cause and prejudice"), *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991), or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court, *see Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

**5.      Petitioner Has Not Established Cause and Prejudice to Excuse the Procedural Default of Claims 2(b), 2(c), 4, or 5(a)-(e)**

   **A.      *General Standard of Law for Cause and Prejudice under* Coleman v. Thompson**

A procedurally defaulted claim may be heard on the merits if a petitioner establishes cause and prejudice to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**B.** *Standard of Law for Cause and Prejudice under* **Martinez v. Ryan**

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during the postconviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to the *Coleman* rule. *Martinez* held that inadequate assistance of postconviction review ("PCR") counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315.  In *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit extended *Martinez*, holding that it can also apply to underlying claims of ineffective assistance of appellate counsel.

In *Trevino v. Thaler*, the Supreme Court described the *Martinez* analysis as consisting of four prongs:

> We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial

counsel [claim] . . . be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21) (alterations in original).

The third and fourth prongs of the analysis are rarely in dispute. With respect to the third prong, the *Martinez* exception applies only to the lack of counsel or ineffectiveness of counsel in the *initial* postconviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance." *Martinez*, 132 S. Ct. at 1320. Rather, the Court in *Martinez* was singularly concerned that, if ineffective assistance of trial counsel claims were not brought in the collateral proceeding which provided the first occasion to raise such claims, the effect was that the claims could not be brought *at all. Id.* at 1316. Therefore, a petitioner may not assert as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, [or] petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

With respect to the fourth prong—that state law must require ineffective assistance of counsel ("IAC") claims to be brought in an initial-review collateral proceeding—the Supreme Court in *Trevino* extended *Martinez* to apply not only where a State *requires* IAC claims to be raised in postconviction proceedings, but also where a State's "procedural framework, by reason of its design and operation, makes it highly unlikely in

**MEMORANDUM DECISION AND ORDER  15**

a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. Therefore, *Martinez* applies in Idaho where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992) (recognizing that in Idaho the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," though in limited instances such claims may be brought on direct appeal "on purported errors that arose during the trial, as shown on the record").

The two strongly disputed issues in a *Martinez* inquiry are generally the first prong, whether an underlying IAC claim is substantial, and the second prong, whether PCR counsel rendered ineffective assistance by failing to adequately raise that IAC claim in state postconviction proceedings.

       i.    <u>Prong One: Substantiality of Underlying IAC Claims</u>

For the *Martinez* exception to apply, a petitioner must bring forward facts demonstrating that his underlying IAC claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard for certificates of appealability from *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal district court to examine the claim under *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

**MEMORANDUM DECISION AND ORDER  17**

Strategic decisions, such as the choice of a defense or what evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a particular theory or issue in the case is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step in the *Strickland* inquiry is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual

> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96.

These standards from *Strickland* for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the underlying IAC claim. The question whether an IAC claim is substantial under *Martinez* is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S.Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, to determine whether a claim is substantial, *Martinez* requires the district court to *review* but not *determine* whether trial or appellate counsel's acts or omissions resulted in deficient performance and in a reasonable

**MEMORANDUM DECISION AND ORDER  19**

probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

      ii.     Prong Two: Lack of PCR Counsel or Ineffective Assistance of PCR Counsel

In addition to showing that the underlying IAC claim is substantial, a petitioner seeking to invoke *Martinez* must also show either that he had no counsel on initial postconviction review, or that his PCR counsel was "ineffective under the standards of *Strickland*." 132 S. Ct. at 1318; *see Trevino*, 133 S. Ct. at 1918. "Ineffectiveness" is a term defined by *Strickland* as (1) deficient performance and (2) a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to PCR counsel's performance, not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the PCR attorney's performance does not constitute "cause." 132 S. Ct. at 1319. The *Strickland* standards for analyzing deficient performance set forth above apply with equal force to PCR counsel in the context of a *Martinez* argument. Importantly, PCR counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

If PCR counsel's performance is deficient, then the court must consider whether that performance was prejudicial under *Strickland*. *See Claubourne v. Ryan*, No. 09-99022,

___ F.3d ___, 2014 WL 866382, *11 (9th Cir. March 5, 2014). Therefore, even if a petitioner shows that his IAC claims are substantial under the first *Martinez* prong, he must still show that postconviction counsel rendered deficient performance and that, "but for post-conviction counsel's failure to raise [the substantial IAC] claims, there is a reasonable probability that the result of the post-conviction proceeding would have been different" under the second prong. *Id.* at *12. These two inquiries will, at times, collapse into one. *Id.* at *16 ("Under the circumstances of this case, if [the petitioner] succeeds in demonstrating that he was prejudiced by the failure of his post-conviction counsel, he will necessarily have established that there is at least 'some merit' to his claim that he suffered ineffective assistance of trial counsel at resentencing.").

The Court may address either inquiry first, and the resolution of one prong may obviate the need to address the other. *See Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

    **C.**    ***Analysis of Cause and Prejudice as Applied to Petitioner's Claims***

        i.    <u>Traditional, or *Coleman*, Cause and Prejudice</u>

Petitioner does not assert that traditional, or *Coleman*, cause exists to excuse the procedural default of his claims. Because Petitioner's *Martinez* argument applies only to

those defaulted claims that allege ineffective assistance of counsel, Petitioner has not

contended that cause exists with respect to Claim 5, which alleges due process violations.

*See Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013), *cert. filed*, Feb. 18, 2014

(declining to extend *Martinez* to *Brady* claims).

The Court now turns to Petitioner's argument that cause exists under *Martinez* to

excuse the procedural default of the IAC claims subject to the instant Motion.

ii.     <u>*Martinez* Cause and Prejudice</u>

Because the *Martinez* exception applies only to IAC claims, the only defaulted

claims to which it might apply are Claims 2(b) and 2(c), which allege ineffective

assistance of trial counsel, and Claim 4, which alleges ineffective assistance of direct

appeal counsel. After a thorough review of the record, the Court concludes that Petitioner

is unable to show either that his PCR counsel performed deficiently under *Strickland* or

that these procedurally defaulted IAC claims are substantial.

As an initial matter, *Martinez* does not apply to Claims 2(b) or 2(c). As explained

above, Petitioner raised these claims in his initial postconviction petition, but did not raise

them *on appeal* from the state district court's dismissal of that petition. Because the

narrow exception created in *Martinez* does not apply to alleged ineffectiveness of PCR

counsel in "appeals from initial-review collateral proceedings," it cannot be used to

excuse the default of Claims 2(b) and 2(c).[1] *Martinez*, 132 S. Ct. at 1320. Thus, the only

---

[1]  To the extent that the Ninth Circuit in *Clabourne* appeared to rely on postconviction
counsel's deficient performance *on appeal* from the dismissal of a postconviction petition, *see*

claim potentially subject to a *Martinez* argument is Claim 4.

Claim 4 alleges that appellate counsel was ineffective for "failing to adequately review [the] trial record and/or present an appeal involving a missing jury instruction."[2] (Pet. ¶ 60.) The instruction at issue was based on model Idaho Jury Instruction 318, which relates to prior inconsistent statements of witnesses.

Petitioner's defense at trial was that he was not the driver of the car that hit the police officers. According to Petitioner, Tom Sage, a friend with whom Petitioner had been drinking, was driving the car. Sage denied driving the vehicle and testified that he had not been in the car with Petitioner at the time of the accident. (State's Lodging A-5 at 448-51.) To rebut Sage's testimony, the defense called Juanita Cunningham as a witness. Ms. Cunningham testified that after the accident she was watching a news report about the crash when Tom Sage, who was living with her at the time, came into the residence with what looked like flour or powder on his clothing, presumably from an air bag

---

*Clabourne*, 2014 WL 866382 at *9, such an approach is contrary to *Martinez*, which clearly does not apply to errors by PCR counsel in appeals from denials of postconviction petitions, 132 S. Ct. at 1320. The failures of Clabourne's postconviction counsel *during the initial review collateral proceeding* are what was relevant in that case: PCR counsel did not comply with the rules for postconviction petitions even after being admonished to do so by the state court. *Clabourne*, 2014 WL 866382 at *9. Further, the state in *Clabourne* did not dispute that PCR counsel rendered deficient performance, so the court's discussion of PCR counsel's performance in the postconviction appeal was dicta. *Id.* at *12.

[2] In his sur-reply, Petitioner also argues that appellate counsel should have raised a claim that a photograph of Petitioner introduced into evidence was improperly labeled as describing air bag burns on Petitioner. (Dkt. 21 at 13.) However, he did not bring this claim in his Petition, and the Court will therefore not address it. Further, Petitioner's general statement in Claim 4 that his appellate counsel "failed to adequately review [the] trial record" is simply too vague to support a claim for relief. (Pet. ¶ 60.)

**MEMORANDUM DECISION AND ORDER  23**

deployment. (State's Lodging A-5 at 906.) Ms. Cunningham also testified that two days

later, she asked Sage "who had hit the cops." Sage told her that he had done it, not

Petitioner. (*Id*. at 913.)

At the time of Ms. Cunningham's testimony, the trial court instructed the jury as

follows:

> [Y]ou have heard the testimony of Tom Sage concerning the
> statements made by him before this trial. The believability of
> witnesses may be challenged by evidence that on some former
> occasion the witness made a statement that was not consistent
> with a witness's testimony in this case. Evidence of this kind
> may be considered by you only for the purpose of deciding
> whether you believe Mr. Sage's testimony. This evidence of
> an earlier statement has been admitted to help you decide if
> you believe Mr. Sage's testimony and you cannot use these
> earlier—these earlier statements as evidence in this case.

(*Id*. at 912.) Petitioner concedes that the instruction was read to the jurors, but asserts that

it was not included in the packet of written instructions sent to the jury room. (Pet. ¶ 60

n.2.)

During deliberations, the jury asked the trial court for an "explanation of Juanita's

testimony in terms of consideration." (Sur-reply, Dkt. 21 at 11; State's Lodging A-5 at

989.) Petitioner was not present when the court and counsel addressed this question. The

trial court did not instruct the jury further. (Sur-reply at 12.) Petitioner claims that

appellate counsel should have challenged the omission of the instruction from the written

packet because "the missing jury instruction was a significantly stronger appellate

argument than an excessive sentence claim which appellate counsel elected to present

instead." (*Id.*)

However, Petitioner has not shown that appellate counsel's failure to raise the issue was an error "so serious that [appellate] counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. First, an appellate attorney is not ineffective for failing to raise every conceivable issue on appeal, or even every nonfrivolous issue. *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

The Court disagrees with Petitioner's belief that the jury instruction claim was particularly strong. It was actually a fairly weak argument, because not only would appellate counsel have had to show that it was unconstitutional for the trial court to have omitted the instruction from the written packet, but the state would likely have been able to prove that the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23-24 (1967); *State v. Stoddard*, 667 P.2d 272, 274 (Idaho Ct. App. 1983). Given that the jury was, in fact, properly instructed that it could consider Ms. Cunningham's testimony as impeachment evidence against Sage, it would have been a steep uphill battle to argue that the mere omission of the instruction from the written packet resulted in prejudice. *Strickland*, 466 U.S. at 694. Therefore, appellate counsel did

not perform deficiently in choosing not to raise this issue. Thus, Petitioner has not shown that his IAC claim regarding the jury instruction is substantial, and PCR counsel was not ineffective for deciding not to raise it during postconviction proceedings. *Martinez* does not apply to excuse the procedural default of Claim 4.

6.      **Miscarriage of Justice**

Although Petitioner's procedural default arguments are focused on the cause and prejudice analysis, the Court will also consider the second exception to the procedural default doctrine. A procedural default is excused if a petitioner shows that he is actually innocent and, therefore, a miscarriage of justice will result if his claims are not heard on the merits. *See Schlup*, 513 U.S. at 329 (1995); *Murray*, 477 U.S. at 488.

Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Types of evidence that can establish factual innocence include credible declarations of guilt by another person, *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), reliable eyewitness accounts, *Schlup*, 513 U.S. at 331, and exculpatory scientific evidence, *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Stated another way, it must be more likely

than not that *every* reasonable juror would vote to acquit.

Petitioner has not met the heavy burden of showing that a miscarriage of justice will occur if his procedurally defaulted claims are not heard on the merits. His own statements that Tom Sage was driving the car at the time of the crash are insufficient. Petitioner has simply not established that every reasonable juror would vote to acquit.

## CONCLUSION

Claims 2(b), 2(c), 4, and 5(a)-(e) were not properly exhausted in the state courts and are procedurally defaulted. Petitioner has not shown cause and prejudice or a miscarriage of justice that would excuse the default. Further, Claims 3 and 6 are not cognizable in this federal habeas proceeding.

Therefore, Respondent's Motion for Partial Summary Dismissal will be granted in part. The Motion will be denied with respect to Claim 2(a), which the Court concludes was properly exhausted in the Idaho state courts.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motion for Partial Summary Dismissal (Dkt. 9) is
      GRANTED IN PART and DENIED IN PART. Claims 2(b), 2(c), 3, 4, 5(a)-
      (e), and 6 are DISMISSED with prejudice.

2.    Respondent shall file an Answer to the remaining claims—Claim 1 (double
      jeopardy) and Claim 2(a) (ineffective assistance of trial counsel based on

the failure to interview or subpoena Travis Anderson)—**within 90 days**
after entry of this Order. The answer should also contain a brief setting
forth the factual and legal basis of grounds for dismissal and/or denial of
the remaining claim. Petitioner shall file a reply (formerly called a traverse),
containing a brief rebutting Respondent's answer and brief, which shall be
filed and served **within 30 days** after service of the answer. Respondent has
the option of filing a sur-reply **within 14 days** after service of the reply. At
that point, the case shall be deemed ready for a final decision.

DATED:  **March 27, 2014**

B. LYNN WINMILL
Chief Judge
United States District Court