UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP A. TURNEY,<br><br>                  Petitioner,<br><br>v.<br><br>TIMOTHY WENGLER, BRENT REINKE, and LAWRENCE WASDEN,<br><br>                  Respondents. | Case No. 1:12-cv-00611-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Philip A. Turney's Petition for Writ of Habeas Corpus (Dkt. 1). On March 27, 2014, the Court granted in part Respondents' Motion for Partial Summary Dismissal and dismissed Claims 2(b), 2(c), 3, 4, 5, and 6 as procedurally defaulted or as non-cognizable. (Dkt. 22.)

Respondents have filed an Answer and Brief in Support of Dismissal with respect to the only remaining claims: Claim 1 (double jeopardy), and Claim 2(a) (ineffective assistance of trial counsel). (Dkt. 23). Petitioner has filed a reply, and Respondents have
**MEMORANDUM DECISION AND ORDER - 1**

filed a sur-reply (Dkt. 27, 29).[1] The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondents on August 1, 2013. (Dkt. 10.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the remaining claims in the Petition and dismissing this case with prejudice.

## BACKGROUND

Petitioner was convicted of two counts of aggravated driving under the influence (DUI) for causing serious injury to two police officers, in violation of Idaho Code § 18-8006(1). Petitioner was also convicted of being a persistent violator. *Id.* at 1170. He was sentenced to concurrent unified terms of life imprisonment, with fifteen years fixed. *Id.*

Petitioner's convictions stem from an incident involving two police officers who were "engaged in a DUI traffic stop of a [third party's] vehicle." *State v. Turney*, 214 P.3d 1169, 1170 (Idaho Ct. App. 2009). Petitioner, who was driving a taxi, "crashed violently

---

1   The Court will grant Petitioner's and Respondents' motions for extensions of time to file the reply and sur-reply. Both documents are deemed timely.

**MEMORANDUM DECISION AND ORDER - 2**

into the stopped patrol vehicles causing serious injury to the two police officers." *Id*.; *see also* State's Lodging D-4 at 1.

On direct appeal, Petitioner argued that he had been subjected to double jeopardy in violation of the Fifth Amendment because he committed only a single act of driving under the influence and, therefore, he could not be charged with two separate criminal counts and subjected to two separate sentences. *Id*. at 1170-71. The Idaho Court of Appeals rejected this claim, determining that "driving is not the *actus reus* of the offense" of aggravated DUI; rather, the statute penalizes any person "causing great bodily harm . . . to any person other than himself in committing" a DUI offense. *Id.* at 1171 (quoting Idaho Code § 18-8006(1)). Petitioner's double jeopardy claim is set forth as Claim 1 of the Petition.

During postconviction proceedings, Petitioner argued, *inter alia*, that his trial counsel rendered ineffective assistance by failing to investigate a witness, Travis Anderson, or to subpoena him to testify at trial. (State's Lodging C-1 at 43; D-1 at 3.) Travis Anderson was under arrest and being held in the back of one of the patrol cars at the time of the crash. (State's Lodging D-4 at 2.) The state district court denied Petitioner's request for appointed counsel and found that his postconviction claims were frivolous. (State's Lodging C-1 at 68-81.)

On appeal from the denial of postconviction relief, the Idaho Court of Appeals rejected Petitioner's claim of ineffective assistance. The court, noting that Petitioner's trial counsel and the prosecutor had both attempted to locate Anderson without success, held that trial counsel's conduct did "not amount to deficient performance of counsel which, to

**MEMORANDUM DECISION AND ORDER - 3**

merit relief, must have so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." (State's Lodging D-4 at 6 (internal quotation marks omitted).) Petitioner's ineffective assistance of trial counsel ("IATC") claim with respect to Travis Anderson is set forth as Claim 2(a) of the Petition.

## DISCUSSION

**1.    Standard of Law**

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits'" under § 2254(d). *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

When a party contests the state court's legal conclusions, including application of

**MEMORANDUM DECISION AND ORDER - 4**

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694.

In *Harrington v. Richter*, 131 S. Ct. at 785-86, the United States Supreme Court reiterated that a federal court may not simply re-determine a claim on its merits after the highest state court has done so, just because the federal court would have made a different decision. Rather, the review is necessarily deferential. The Supreme Court explained that under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision"; and (2) "then it must ask whether it

**MEMORANDUM DECISION AND ORDER - 5**

is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*.

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d

984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, a federal court must undertake a § 2254(d)(2) analysis. To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**MEMORANDUM DECISION AND ORDER - 7**

If the state court factual determination was unreasonable, then the federal court is not limited by § 2254(d)(1), but proceeds to a de novo review of the claims, which may include consideration of evidence outside the state court record, subject to the limitations of § 2254(e)(2). *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

2. **Claim 1: Double Jeopardy**

    A. *Double Jeopardy Standard of Law*

    The Double Jeopardy Clause of the Fifth Amendment includes three basic protections: it protects a defendant from (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction", and (3) "multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). This case involves the third protection—Plaintiff claims that he should have been sentenced only on one count of aggravated DUI because he committed only one act of driving under the influence.

    The protection against cumulative punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Id.* at 499. Thus, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). The Double Jeopardy Clause is not implicated if the legislature *intended* to impose multiple or cumulative punishments. *Id.* at 367-68.

**B.** *The Idaho Court of Appeals' Decision on Petitioner's Double Jeopardy Claim Was Reasonable Under AEDPA*

In rejecting Petitioner's double jeopardy claim, the Idaho Court of Appeals concluded that the state legislature intended to impose multiple punishments for aggravated DUI if more than one person was injured by the offender:

> Idaho Code Section 18-8006(1) [aggravated DUI] . . . provides that any "person causing great bodily harm, permanent disability or permanent disfigurement to any person other than himself in committing a violation of the provisions of section 18-8004(1)(a) or (1)(c), Idaho Code [non-aggravated DUI], is guilty of a felony." This Section provides for an offense which is separate and distinct from the crime of DUI and its penalties and enhancements in I.C. §§ 18-8004 and 18-8005. Idaho Code Section 18-8006 makes it a crime *to cause great bodily harm to another person while in violation* of I.C. § 18-8004.

*Turney*, 214 P.3d at 1171 (emphasis added). The Court continued: "The actus reus, or gravamen, of the offense defined by I.C. § 18-8006 is the act of causing injury to another, not the act of driving under the influence. Therefore, *when there are multiple victims that have received great bodily harm, multiple charges may appropriately be filed against the offender*." *Id*. (emphasis added).

As the United States Supreme Court has made clear, federal courts are bound by a state court's construction of that state's statutes. *Hunter*, 459 U.S. at 368. Therefore, Petitioner cannot meet his heavy burden under AEDPA of establishing that the Idaho Court of Appeals' decision was objectively unreasonable. *See* 28 U.S.C. § 2254(d). As determined by the Idaho Court of Appeals, the Idaho legislature *intended* to impose a separate punishment for each person injured in an aggravated DUI case. Petitioner injured

**MEMORANDUM DECISION AND ORDER - 9**

two people while he was driving under the influence, thereby committing two separate counts of aggravated DUI. Accordingly, Petitioner's multiple convictions and sentences do not violate the Double Jeopardy Clause. *See Hunter*, 459 U.S. at 366-68.

3. **Claim 2(a): Ineffective Assistance of Trial Counsel Regarding Witness Travis Anderson**

   A. *Ineffective Assistance Standard of Law*

The standard for Sixth Amendment IATC claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

> the presumption that, under the circumstances, the challenged
> action might be considered sound trial strategy. There are
> countless ways to provide effective assistance in any given
> case. Even the best criminal defense attorneys would not
> defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or which evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision that
> makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Id.* at 690-91.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the Idaho Court of Appeals reasonably applied *Strickland*. *See Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute ineffective assistance simply because, in retrospect, better tactics are known to have been available. *Bashor v.*

*Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

If a habeas petitioner shows that trial counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770,

792 (2011).

When evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d)(1), the Court's review of that claim is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

**B.     *Facts Relevant to Petitioner's Remaining IATC Claim***

In connection with Petitioner's claim that trial counsel was ineffective in failing to interview or subpoena Travis Anderson to testify at trial, the Idaho Court of Appeals found that "[d]uring the trial, shortly after the State rested, the prosecutor and defense counsel engaged in a discussion with the district court regarding Anderson." (State's Lodging D-4 at 5.) The prosecutor had intended to call Anderson to testify, and Anderson was even at the courthouse prepared to testify during the prosecution's case. However, the prosecutor did not call Anderson the day he was present at the courthouse. Because Anderson "was very frustrated because he didn't get put on that day," the prosecutor "made the decision to go ahead without him and conclude the State's case." (*Id.*)

After the prosecutor decided not to call Anderson to testify, the prosecutor learned that defense counsel had earlier provided the state with a trial subpoena for Anderson. (*Id.*) The prosecutor had not previously seen the subpoena and therefore had not served it. The prosecutor continued:

> [Anderson] was very cooperative with the State, but the only contact means I had was his phone number. He has already complained vigorously to me that shortly after the accident someone was calling representing themselves to be related to the defendant and begging for assistance because the

**MEMORANDUM DECISION AND ORDER - 13**

> defendant has a child and needed his help and [Anderson] was very upset that someone had given them the number. . . . [H]e's been adamant that I'm not allowed to give that out. Other than the phone number, I don't know how to reach him. He has not responded to my investigator's calls at all today. I don't know an address for him. I just had the contact number and he did not appear as he said he would. I think frankly it is frustration because he was around the courthouse and had not been able to testify earlier. It cost him time from work. . . . He has simply not appeared. I have no means other than leaving messages to reach him. . . .

(*Id*. at 5-6) (alterations in original).

The state court found that defense counsel had provided to the prosecutor the subpoena for Anderson six days earlier, "but the prosecutor was only made aware of it that day." (*Id*. at 6.) After the prosecutor learned of defense counsel's subpoena,

> [t]he district court ordered the prosecutor to attempt to locate Anderson and serve the subpoena, to which the prosecutor agreed. Upon being asked if the course of action was satisfactory to him, defense counsel replied, "Well, Judge, as you may know from my previous representations to you, *we have tried to reach him before*."

(*Id*.) (emphasis in original). "No further reference to Anderson was made on the record and he was not called to testify." (*Id*.)

### C. *The Idaho Court of Appeals' Rejection of Petitioner's IATC Claim Was Reasonable Under AEDPA*

Petitioner argues that these findings of the Idaho Court of Appeals are unreasonable under 28 U.S.C. § 2254(d)(2)—and therefore are not entitled to a presumption of correctness under § 2254(e)(1)—because of "the lack of a full record in the post-conviction proceeding." (Dkt. 27 at 2.) Petitioner is correct that the state district court denied him

counsel during postconviction proceedings and did not hold an evidentiary hearing. Moreover, state court factual findings may be rejected if they are "based on an unreasonable evidentiary foundation." *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003). Petitioner claims that he is entitled to an evidentiary hearing to establish the facts relevant to his IATC claim.

However, a state court's failure to hold an evidentiary hearing does not necessarily render its fact-finding process unreasonable under AEDPA. *See Schriro v. Landrigan*, 550 U.S. 465, 476 (2012) (upholding state court's factual findings despite the fact that no evidentiary hearing had been held); *Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012) ("[W]e have never held that a state court must conduct an evidentiary hearing to resolve every disputed factual question."). Rather, a state court may reasonably find facts without holding an evidentiary hearing "so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question." *Hibbler*, 693 F.3d at 1147.

The Idaho Court of Appeals concluded that the trial record itself refuted Petitioner's IATC claim regarding Travis Anderson. (State's Lodging D-4 at 5-6.) In so doing, the court reasonably concluded that further evidentiary hearings were unwarranted. The trial record shows that Petitioner's trial counsel had attempted to contact Anderson to no avail. The record shows further that Petitioner's trial counsel even provided a subpoena for Anderson to the state but that the prosecutor mistakenly overlooked it. Once notified of the oversight, the prosecutor said the state would attempt to subpoena Anderson, and defense

**MEMORANDUM DECISION AND ORDER - 15**

counsel acquiesced. Because the record supports the court of appeals' factual findings regarding defense counsel's actions despite the lack of an evidentiary hearing on Claim 2(a), the Court must presume correct the Idaho Court of Appeals' findings under § 2254(e)(1) that Petitioner's trial counsel attempted to locate and to call Anderson to testify.

In concluding that Petitioner's trial counsel was not ineffective in his handling of potential witness Travis Anderson, the Idaho Court of Appeals held that "[t]o the extent Anderson could not be located, as represented by the prosecutor, this does not amount to deficient performance of counsel which, to merit relief, must have so undermined the proper functioning of the adversarial process that the trial cannot be relied upon has having produced a just result." (State's Lodging D-4 at 6) (internal quotation marks omitted).

The double deference that applies when reviewing ineffective assistance claims in habeas proceedings leaves no room for this Court to second-guess the Idaho Court of Appeals' conclusion that Petitioner's counsel did not render deficient performance in handling the issue of Travis Anderson. *See Pinholster*, 131 S. Ct. at 1403; *Strickland*, 466 U.S. at 689. Petitioner's trial counsel did indeed attempt to contact and to call Anderson to testify, and the failure to Anderson to testify was entirely outside defense counsel's control. Thus, Petitioner has not shown that his counsel performed deficiently or that the Idaho Court of Appeals unreasonably applied clearly-established Supreme Court precedent in rejecting his IATC claim regarding Anderson.

## CONCLUSION

Petitioner has not established that the Idaho Court of Appeals unreasonably applied clearly-established Supreme Court precedent, or that its decisions were based on unreasonable factual determinations, in rejecting Petitioner's double jeopardy claim or his IATC claim regarding witness Travis Anderson. *See* 28 U.S.C. § 2254(d). Therefore, Claims 1 and 2(a) must be denied on the merits. Because the remaining claims in the Petition have already been dismissed, the Court will dismiss this entire action with prejudice.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Enlargement of Time to File Traverse Reply Brief to Respondent's Answer and Brief in Support of Dismissal of Petition for Writ of Habeas Corpus (Dkt. 24) is GRANTED.

2. Respondents' Motion for Extension of Time to file a sur-reply (Dkt. 28) is GRANTED.

3. Claims 1 and 2(a) of the Petition for Writ of Habeas Corpus are DENIED, and this entire action is DISMISSED with prejudice.

4. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the

notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 11, 2014

B. Lynn Winmill
Chief Judge
United States District Court